UNITED STATES of America,
Plaintiff-Appellee,

v.

William Michael ADAMS,
Defendant-Appellant.

No. 84–3885
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 16, 1985.

Robert J. Vossler, Federal Public Defender, Tallahassee, Fla., for defendant-appellant.

Michael Simpson, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before RONEY, FAY and JOHNSON, Circuit Judges.

PER CURIAM:

Lieutenant Lowell E. Hudson, an official of the Federal Corrections Institute ("FCI") in Tallahassee, Florida, was informed that inmate, William Michael Adams, would be carrying marijuana when he returned from an outside work detail. Lt. Hudson then informed the warden of the institute and obtained permission to conduct an investigation. When Adams returned to the compound that evening, he was intercepted by prison officials and escorted to the lieutenant's office. Adams was subsequently placed under observation in a dry cell until the balloons containing marijuana were discovered.

Adams was convicted of the attempted introduction of contraband into a federal corrections institute without the warden's knowledge and consent, and with possession of marijuana. 18 U.S.C.A. § 1791, 28 C.F.R. § 6.1, 21 U.S.C.A. § 844. We affirm.

Expert testimony revealed the methods used to smuggle marijuana into the prison. There are two basic smuggling methods. Under the first method, a visitor passes a small balloon full of marijuana, half as

§ 404.1520, has been met under the facts of this case.

large as the end of a thumb to an inmate in the visiting room. The inmate swallows the balloon to defeat strip searches and later recovers it.

The second method involves bulk amounts of marijuana dropped on the outer perimeter of the institution's unsecured grounds by a person who is not an inmate. The marijuana is wrapped in balloons about three inches long and an inch or three-quarters of an inch in diameter. There are generally one hundred balloons to a load. This scheme is directed by a financier, an inmate at the institution. Another inmate, known as a mule, working a detail on the outer unsecured grounds, locates the bulk drop of marijuana, stashes the majority on the outside grounds, and then ferries two balloons at a time into the secured area of the prison by placing the balloons in his rectum, thus avoiding detection in a strip search. The mule then turns the marijuana over to an inmate distributor, within the secured compound, who acts at the direction of the financier to distribute the contraband to inmate users. The mule is then paid with a portion of the marijuana that he brings into the prison.

Adams acted as the mule. His role in the venture was clear. As a member of an outside detail, he had ready access to the unsecured grounds of the prison. He was caught upon reentering the prison after his work detail with two balloons containing sixteen grams of marijuana. He admitted dealing with at least four other balloons on that day.

■ Adams is probably correct in arguing that he did not come into possession of the marijuana until after it had been introduced into the unsecured portion of the institution's grounds. He argues that the crime was therefore completed before he became involved.

In our judgment, this argument calls for a stricter construction of the statute than intended. Although both 18 U.S.C.A. § 1791 and 28 C.F.R. § 6.1 prohibit the introduction of contraband into or upon the "grounds" of a federal corrections institute, an inmate could be convicted as an aider and abettor, although he did not physically bring the contraband across the institution's perimeter. Adams, by accepting the marijuana and concealing it, became an aider and abettor in a continuing crime. *United States v. Martinez*, 555 F.2d 1269, 1272 (5th Cir.1977). He knew that contraband was being introduced into the institution, he associated himself with that endeavor, and he participated with an intent that the crime be accomplished. The criminal purpose sought to be prohibited, introducing the contraband into the general prison population, would have been completed only after Adams carried out his part of the enterprise. *United States v. York*, 578 F.2d 1036, 1040 (5th Cir.1978).

■ Adams next argues that the warden knew he was coming into the prison with marijuana and therefore the Government did not prove his actions were without the institutional warden's knowledge or consent as interpreted by the Attorney General's Regulations implementing 18 U.S.C.A. § 1791.

Again, Adams contends for a narrower reading of the regulation than is reasonable. The statute does not speak of the warden's knowledge or consent. The regulations are designed to protect from criminal responsibility persons acting with the express consent and approval of the warden. In the instant case, Lt. Hudson testified that neither he nor any other staff member consented to Adams' introduction of the marijuana. To the contrary, at the warden's direction, Adams was seized, frisked, searched, handcuffed, questioned and held in a dry cell until he excreted the balloons. That the warden may have suspected, or even known that a person would attempt to illegally bring contraband into the institution, where that person does not himself rely on the warden's consent or knowledge, would not defeat a conviction under the statute. The evidence was sufficient to prove that the defendant's actions were not done with any immunizing consent or knowledge of the warden.

The order of the district court is AFFIRMED.