[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 95-8502

———————————

D. C. Docket No. 1:94-CR-386-ODE


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN M. LONG, JR.,

Defendant-Appellant.


———————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————

**(September 16, 1997)**


Before TJOFLAT and ANDERSON, Circuit Judges, and NANGLE*, Senior
Circuit Judge.

———————————————————

*Honorable John F. Nangle, Senior U.S. District Judge for the
Eastern District of Missouri, sitting by designation.

TJOFLAT, Circuit Judge:

Following a plea of guilty to a violation of 21 U.S.C. § 1791 (1994),[1] the district court sentenced the appellant, John Long, to a term of imprisonment and imposed a fine.  He appeals his sentence, challenging both the term of imprisonment and the fine.  We find no error in the imposition of the fine, but conclude that Long's challenge to his prison term has merit.  We therefore vacate that portion of his sentence and remand the case for further proceedings.

I.

The parties do not dispute the facts of this case.  While employed as a food service foreman in the United States Penitentiary-Atlanta, Long was arrested while attempting to carry 85.1 grams of cocaine into the prison.  A two-count indictment charged him with possession with intent to distribute a narcotic controlled substance in violation of 21 U.S.C. § 841 (1994) ("Count I"), and with attempting to provide cocaine to an inmate in a federal prison in violation of 18 U.S.C. § 1791 (1994) ("Count II").  Pursuant to a negotiated plea agreement, Long pled

---

[1] Section 1791, "Providing or possessing contraband in prison," states, in pertinent part,

   (a) Offense.--Whoever--
      (1) in violation of a statute or a rule or order issued
   under a statute, provides to an inmate of a prison a
prohibited object, or attempts to do so . . . shall be
punished as provided in subsection (b) of this section.

18 U.S.C. 1791 (1994).

guilty to Count II, and Count I was dismissed.  A Presentence

Investigation Report ("PSR") was prepared.

According to the PSR, Long's base offense level was

prescribed by United States Sentencing Commission, Guidelines

Manual, § 2P1.2 (Nov. 1, 1994).  In determining Long's offense

level, the PSR recommended an enhancement of two points for abuse

of a position of trust under section 3B1.3,[2] and recommended a

reduction of three points for acceptance of responsibility under

section 3E1.1.  The PSR also found that Long was able to pay a

fine.  Given Long's criminal history category of I, these

recommendations yielded an offense level of 25, a sentence range

of 57 to 71 months imprisonment, and a fine range of $10,000 to

$100,000.

Long objected to the PSR's recommendation of a section 3B1.3

enhancement and to the PSR's finding that he was able to pay a

fine.  On April 13, 1995, the district court, however, adopted

the PSR's guideline computation and sentence range.  The court

sentenced Long to 57 months of imprisonment and three years of

supervised release, imposed a fine of $2,000, and ordered him to

pay a special assessment of $50.[3]

---

[2]  Section 3B1.3 provides, in relevant part:
    If the defendant abused a position of public
    or private trust . . . in a manner that
    significantly facilitated the commission . .
    . of the offense, increase by 2 levels.  This
    adjustment may not be employed if an abuse of
    trust . . . is included in the base offense
    level or specific offense characteristic.

U.S.S.G. § 3B1.3 (1994).

[3]  Long does not challenge the special assessment.

II.

The parties do not dispute that the starting point for determining Long's offense level is section 2P1.2. That guideline states:

**§ 2P1.2.  <u>Providing or Possessing Contraband in Prison</u>**

(a)  Base Offense Level:

    (1)  **23**, if the object was a firearm or destructive device.

    (2)  **13**, if the object was a weapon (other than a firearm or a destructive device), any object that might be used as a weapon or as a means of facilitating escape, ammunition, LSD, PCP, or a narcotic drug.

    (3)  **6**, if the object was an alcoholic beverage, United States of foreign currency, or a controlled substance (other than LSD, PCP, or a narcotic drug).

    (4)  **4**, if the object was any other object that threatened the order, discipline, or security of the institution or the life, health, or safety of an individual.

(b)  Specific Offense Characteristic

    (1)  If the defendant was a law enforcement or correctional officer or employee, or an employee of the Department of Justice, at the time of the offense, increase by **2** levels.

(c)  Cross Reference

    (1)  If the defendant is convicted under 18 U.S.C. § 1791(a)(1) and is punishable under 18 U.S.C. § 1791 (b)(1), the offense level is **2** plus the offense level from § 2D1.1, but in no event less than level **26.**

U.S.S.G. § 2P1.2 (1994).

The parties also agree that subsection (c) applies to Long because he was convicted under section 1791(a)(1) and was punishable under section 1791(b)(1).  <u>See</u> U.S.S.G. § 2P1.2(c)(1). The parties do not dispute that the court must therefore look to

the drug quantity table found in section 2D1.1, which provides a base offense level of 16 for Long. See generally U.S.S.G. § 2D1.1(c)(12) (providing a base offense level of 16 for unlawfully possessing with intent to distribute "[a]t least 50 G but less than 100 G of Cocaine.")

At this point, the parties' readings of the guidelines diverge. Long argues that the district court erred in applying the enhancement for abuse of trust under section 3B1.3 for three reasons. First, he argues, the application of the special offense characteristic under section 2P1.2(b) precluded the 3B1.3 enhancement. Second, the guidelines required the court to make all adjustments under Chapter Three of the Guidelines to the level prescribed by the drug quantity table before it determined whether that level exceeded the minimum level of 26 provided in section 2P1.2(c). Finally, Long argues that he did not occupy a "position of trust," and therefore the 3B1.3 enhancement did not apply to him. The Government responds that the district court properly computed Long's offense level by finding, first, that his base offense level was 26 because the level determined from section 2D1.1(c)(12) was less than 26, and then applying the Chapter Three adjustments (under sections 3B1.3 and 3E1.1) to that base offense level to reach an offense level of 25.

A.

Long first argues that the court cannot apply a 3B1.3 enhancement to him because it has already applied section

5

2P1.2(b)(1) to him.  Section 1B1.1(b) instructs the sentencing court to "[d]etermine the base offense level and apply any appropriate specific offense characteristics contained in the particular guideline in Chapter Two in the order listed." U.S.S.G. § S 1B1.1(b) (emphasis added).  Long argues that this instruction required the sentencing court to apply subsections 2P1.2(a) and (b) before it applied subsection 2P1.2(c).  Long then points to the application note for section 2P1.2, which provides that a court shall not make a section 3B1.3 enhancement where it has already made an enhancement under section 2P1.2(b)(1).  See  U.S.S.G. § 2P1.2, comment. (n.1).  Thus, Long contends, the district court erred in applying a 3B1.3 enhancement.

Long's interpretation of these sections would have merit in light of the application note cited supra, but for the fact that section 2P1.2(b) simply has not been applied to him.  The PSR clearly recommended no enhancement under subsection (b), and the transcript of the sentencing hearing indicates that the court accepted this recommendation, over Long's objection, and did not make a section 2P1.2(b) enhancement.

We note that the court's substitution of the 3B1.3 enhancement for the 2P1.2(b) enhancement appears to have been error, however, because the 2P1.2(b) enhancement is for a specific offense characteristic and must be applied if the facts

of the case warrant it.  <u>See</u> U.S.S.G. § 1B1.1(b).[4]  The plain terms of § 2P1.2(b) appear to apply squarely to this case, and we see no reason why the district court should not apply that enhancement on remand.[5]

B.

Long also argues that the district court erred by applying the section 3B1.3 enhancement at the wrong point in the calculation of Long's offense level.  Long contends that, under section 2P1.2(c), all Chapter Three adjustments must be made to the offense level found by application of the drug table in section 2D1.1 prior to the determination of whether that level exceeds the minimum offense level of 26 provided for in section 2P1.2(c).  Under Long's approach, his offense level would be 2 (from section 2P1.2(c)) + 16 (from section 2D1.1(c)(12)) + 2 (for section 3B1.3 enhancement for abuse of position of trust) – 3 (for section 3E1.1 reduction for acceptance of responsibility) = 17.  Because this level is less than 26, Long's offense level

---

[4]  As we explain in part II.C, <u>infra</u>, the district court also erred in applying the enhancement under § 3B1.3 for abuse of a position of trust.

[5]  The fact that § 2P1.2(c) may be applicable to Long does not change this conclusion.  <u>See</u>, <u>e.g.</u>, <u>United States v. Cruz</u>, 58 F.3d 550, 554 (10th Cir. 1995) (observing that "[t]he increase of 2 levels under § 2P1.2(b) for being a correctional officer does not turn upon the type of prohibited object involved," and that therefore the increase could be applied to a base offense level determined under § 2P1.2(c)).

would be 26.[6]  See U.S.S.G. § 2P1.2(c).

The Government counters that the court should make such Chapter Three adjustments only after it determines whether the level from section 2D1.1 exceeds section 2P1.2(c)'s minimum level of 26.  Under the Government's approach, the district court applied the guidelines properly:  2 (from section 2P1.2(c)) + 16 (from section 2D1.1(c)(12)) = 18.  Because this is less than 26, then 26 is the base offense level.  The Chapter Three adjustments are then made to reach the final offense level: 26 + 2 (for section 3B1.3 enhancement) - 3 (for section 3E1.1 reduction) = 25.

In support of his argument, Long cites subsections (b)(1) and (d) of section 1B1.5, which provide:

(b)(1)     An instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline (i.e., the base offense level, specific offense characteristics, cross references, and special instructions), except as specifically provided [herein].

.  .  .  .

---

[6]  This offense level is actually higher than the level of 25 that the district court actually used.  If we agreed with Long's argument here but concluded that he did occupy a position of trust, he would clearly be worse off than he was prior to his appeal.  Long was sentenced to 57 months imprisonment, which falls below the range of 63 to 78 months provided by the guidelines for a defendant with an offense level 26 and criminal history category I.  See U.S.S.G. ch. 5, Pt. A, sentencing table.
Long's brief does not recognize this possibility; instead, it implicitly suggests that the enhancement should be made prior to the comparison with 26, and that the reduction should be made after the comparison;  this approach would yield a level of 23. Long presents no authority and no reason for this approach, and we therefore reject it.

(d)        A reference to another guideline under
           subsection (a) or (b)(1) above may direct
           that it be applied only if it results in the
           greater offense level.  In such case, the
           greater offense level means the greater final
           offense level (i.e., the greater offense
           level taking into account both the Chapter
           Two offense level and any applicable Chapter
           Three adjustments).

U.S.S.G. § 1B1.5 (1994).  Long argues that these two subsections apply to section 2P1.2(c) and direct the district court to make all Chapter Three adjustments before determining whether offense level found in section 2D1.1 exceeds 26.  The Government contends that the language regarding "offense level" in section 2P1.2(c) should be read as "base offense level," and that the general application instructions found in section 1B1.1 apply rather than those found in section 1B1.5.  Under this reading, the district court properly made Chapter Three adjustments to a base offense level of 26, after determining that 2 plus the base offense level from § 2D1.1, 16, is less than 26.  We agree with the Government.

Neither section 1B1.5(b)(1) nor section 1B1.5(d) support Long's reading of section 2P1.2.  First, section 1B1.5(b)(1) does not mention Chapter Three enhancements.  The focus of that subsection is on the Chapter Two elements which make up the offense level: "the base offense level, specific offense characteristics, cross references, and special instructions." U.S.S.G. § 1B1.5(b)(1).  Thus, this subsection offers no support for Long's reading.

Similarly, section 1B1.5(d) does not dictate the result that

9

Long urges.  That subsection applies, by its plain terms, only to cross references which direct that the referenced guideline shall "be applied only if it results in the greater offense level." U.S.S.G. § 1B1.5(d).  Once again, Long misreads section 2P1.2(c). The cross-reference contained in section 2P1.2(c) is simply not the sort of cross reference described in section 1B1.5(d). Subsection 2P1.2(c) sets a floor: it directs that the offense level determined under section 2D1.1 is applied only where the offense level found in that section, increased by two levels, yields a level of 26 or higher.  <u>See</u> U.S.S.G. § 2P1.2(c).

In contrast, Section 2J1.2 provides an example of the type of cross-reference to which section 1B1.5(d) clearly applies. That section provides:

**2J1.2.      <u>Obstruction of Justice</u>**

(a)   Base Offense Level:  **12**

(b)   Specific Offense Characteristics

(1) If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by **8** levels.

(2)  If the offense resulted in substantial interference with the administration of justice, increase by **3** levels.

(c)   Cross Reference

(1) If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, <u>if the resulting offense level is greater than that determined above.</u>

U.S.S.G. § 2J1.2 (emphasis added).  As the emphasized language in

10

section 2J1.2 indicates, the cross-referenced guideline will apply only if it is greater than the level determined by application of subsections 2J1.2(a) and (b).[7]  In short, subsection 1B1.5(d) simply does not apply to section 2P1.2.

This reading is not only supported by the terms of the guidelines, it is also the only reading which makes any sense. Applying the instruction found in section 1B1.5(d) to section 2J1.2 is appropriate.  In a case where the cross reference may apply, the district court computes the final offense level under (a) and (b) (including Chapter Three adjustments) and then computes the final offense level under the referenced section, 2X3.1 (also including Chapter Three adjustments).  See U.S.S.G. § 2J1.2(c).  Section 2J1.2(c) directs the court to compare these two results, and apply the greater level as the final offense level.  The key point is that both levels are shaped by any applicable Chapter Three adjustments.

Applying section 1B1.5(d) to section 2P1.2 as Long argues would result in a sentence that does not take Chapter Three adjustments into account in a large number of cases.  Under Long's approach, the final offense level (including Chapter Three adjustments) is computed under section 2P1.2.  This level is the defendant's final offense level only if it exceeds 26; if not, the final offense level is 26.  Thus, in a large number of these cases, the final offense level will be 26, regardless of the

---

[7]  Section 2D1.12, cited in part II.A, supra, provides an additional example of a cross reference to which subsection 1B1.5(d) applies.

applicable Chapter Three adjustments.

A brief examination of the consequences of Long's interpretation convinces us that our reading is correct. Imagine two defendants, X and Y.  X seeks to sell cocaine inside a federal prison.  He arranges to purchase cocaine outside the prison and has made contact with several inmates who will sell the cocaine for him inside the prison.  He approaches Y about carrying the cocaine into the prison.  Y is caught attempting to enter the prison with 85 grams of cocaine and X and Y are arrested.  Y immediately confesses his role, pleads guilty, and provides assistance to law enforcement personnel.  X refuses to cooperate with law enforcement personnel and testifies falsely at his trial.

In this hypothetical case, Y has a strong argument that he is entitled to two Chapter Three reductions:  three levels under section 3E1.1 for acceptance of responsibility and two levels under section 3B1.2(b) for being a minor participant.  Under Long's reading, Y's offense level under section 2P1.2 would be 2 (from section 2P1.2(c)) + 16 (from section 2D1.1(c)(12)) - 3 (for section 3E1.1 reduction) - 2  (for section 3B1.2(b) reduction) = 13.  On the other hand, two Chapter Three enhancements arguably apply to X:  four levels under section 3B1.1(a) for being an organizer or leader of the criminal activity, and two levels under section 3C1.1 for obstructing the administration of justice.  His offense level under Long's interpretation is therefore 2 (from section 2P1.2(c)) + 16 (from section

12

2D1.1(c)(12) + 4 (for section 3B1.1(a) enhancement) + 2 (for section 3C1.1 enhancement) = 24. In each case, the minimum offense level under section 2P1.2(c) would operate, and each defendant would have a final offense level of 26. Chapter Three adjustments are designed to avoid precisely this result: virtually the same treatment for two defendants whose culpability and remorse differ markedly. See generally United States v. Werlinger, 894 F.2d 1015, 1018 (8th Cir. 1990) ("The Sentencing Commission clearly intended the adjustments under Chapter Three of the Guidelines to take into account circumstances that, for sentencing purposes, aggravate or mitigate the seriousness of the offenses categorized in Chapter Two.") There is no indication that section 2P1.2(c) intends this result.

## C.

Long makes a final argument on this first issue: that section 3B1.3 does not apply to him because he did not abuse a position of trust. The two level enhancement under section 3B1.3 applies to Long only if he (1) occupied a position of trust, and (2) this position of trust significantly facilitated the commission or concealment of his offense. See United States v. Kummer, 89 F.3d 1536, 1547 (11th Cir. 1996). Long contends that the government here has not shown the first element; he acknowledges that the Bureau of Prisons "trusted" him in the colloquial sense but argues that he did not occupy a "position of trust" as that term is defined by § 3B1.1. The Government

13

counters that Long occupied a position of trust because prison officials did not search Long when he entered the prison; when Long attempted to bring drugs into the prison, he abused this position of trust.

We hold that Long did not occupy a "position of trust" as section 3B1.3 defines that term. The Government's reading would extend to virtually every employment situation because employers "trust" their employees. The application note to section 3B1.3 clearly indicates that the guideline does not intend coverage this broad:

> "Public or private trust" refers to a position of public or private trust <u>characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)</u>. Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. . . . This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. § 3B1.3, comment. (n.1) (emphasis added). See also United States v. West, 56 F.3d 216, 220 (D.C. Cir. 1995) (noting that "the commentary's focus on positions characterized by professional or managerial discretion places a significant limit on the types of positions subject to the abuse-of-trust enhancement").

To the extent that Long had any discretion in carrying out

14

his duties as a food service foreman, the Government has failed to demonstrate that Long exercised that discretion to bring cocaine into the prison.  Instead, the Government points to the fact that, <u>as an employee of the prison</u>, Long could enter the prison without being searched.  The prison extended this same level of trust to all prison employees.  The Government argues, therefore, that an enhancement for an abuse of a position of trust would apply to <u>any</u> Bureau of Prisons employee who brought cocaine into the prison.  The application note cited above indicates that section 3B1.3 simply does not extend to every employment situation.  Accordingly, we hold that the district court erred in applying a two-level increase under section 3B1.3 to Long's offense level.

## III.

Long contends that the district court erred in imposing a $2,000 fine without making explicit findings as to his ability to pay a fine.  Long claims that he is indigent and lacks the ability to pay a fine.  As evidence for this, Long points to the fact that court-appointed counsel represented him at trial,[8] that he must pay $700 per month in child support, and that, given his felony conviction, he is unlikely to be able to return to his

---

[8] Although we acknowledge that the representation of Long by appointed counsel may indicate his inability to pay, <u>see</u> U.S.S.G. § 5E1.2, comment. (n.3), that fact is not determinative.

15

pre-conviction earning capacity.[9]

We affirm the district court's imposition of a fine of $2,000 in this case.  We review a fine set by the district court for clear error.  United States v. Lombardo, 35 F.3d 526, 527 (11th Cir. 1994).  Section 5E1.2(a) provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay."  Given Long's offense level of 25, the guidelines required the district court to impose a fine of between $10,000 and $100,000, see U.S.S.G. § 5E1.2(c)(3), unless it determined, inter alia, that he could not pay, and would not likely become able to pay, a fine within that range.  See U.S.S.G. § 5E1.2(f). The guidelines provide a list of seven factors that the court must consider when setting a fine.  See U.S.S.G. § 5E1.2(d)[10];

---

[9]  With regard to his earning capacity, Long acknowledges that he made over $40,000 per year working at the prison.  He argues, however, that his felony conviction in this case will render him unable to obtain a job earning a similar wage in the future.  He therefore suggests that the court should have considered his income prior to working at the prison as the relevant one for purposes of determining his ability to pay. The PSR indicates his income prior to working at the prison was approximately $17,000.

[10]  Section 5E1.2(d) provides:

In determining the amount of the fine, the court shall consider:

(1)  the need for the combined sentence to reflect the seriousness of the offense . . . , to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2)  any evidence presented as to the defendant's ability to pay the fine (including ability to pay over a period of time) in light of his earning capacity and

16

see also Lombardo, 35 F.3d at 528-529.

While the district court did not make explicit findings of fact on the record regarding Long's ability to pay, the record clearly indicates that the district court considered Long's current financial situation and future prospects. See id. at 530 (holding that where "the record contains sufficient information with respect to the seven factors [listed in section 5E1.2(d)] to permit us to find that the district court did not clearly err in imposing or in setting the amount of the fine, . . . we will not reverse merely because the district court failed to make specific findings on each of the seven factors"). The issue of Long's ability to pay a fine was raised in Long's objections to the PSR and at the sentencing hearing. The district court departed downward from the guidelines range of $10,000 to $100,000 in order to impose a $2,000 fine. Moreover, the court provided that Long could pay the fine on the terms ordered by the probation

---

financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct'

(6) whether the defendant previously has been fined for a similar offense; and

(7) any other pertinent equitable considerations.

U.S.S.G. § 5E1.2(d) (emphasis added).

17

office while Long serves his term of supervised release. Over the course of Long's three years of supervised release, he would have to pay less than $56 per month (plus interest) to pay the $2,000 fine. We cannot conclude that the district court was clearly erroneous in imposing this fine on Long.

IV.

In conclusion, we hold that the district court erred in increasing Long's offense level under section 3B1.3; thus, we VACATE the part of Long's sentence calling for a term of imprisonment and REMAND the case for further proceedings. We find no error in the fine the district court imposed, and therefore AFFIRM that portion of the case.

AFFIRMED, in part; VACATED, in part, and REMANDED.