[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-11570

_____

D.C. Docket No. 99-00007-7-CR-J-20C

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE RAY WARD, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 15, 2000)**

Before BLACK, CARNES and KRAVITCH, Circuit Judges.

CARNES, Circuit Judge:

Eddie Ray Ward, Jr. appeals his sentence, contesting two enhancements applied by the district court. First, he contends that the district court erred in enhancing his base offense level by two pursuant to U.S.S.G. § 2B1.1(b)(4)(A), which provides for a two-level enhancement if the committed offense involved "more than minimal planning." Second, he contends that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust. We find merit in his second contention, but not in his first.

## I. BACKGROUND

Eddie Ray Ward, Jr. was employed by Brinks, Inc., as an armed security guard. He was assigned to accompany Brinks armored cars during the pick-up and delivery of bank deposits. On November 25, 1998, a Brinks armored car picked up money from a First Union Bank in Panama City, Florida and transported it to a secure location in Tallahassee, Florida. The money was then transferred from Tallahassee to Jacksonville, Florida. During this transfer, while the other guard working with him was absent, Ward removed $20,000 from one of the unsealed money bags in the car and placed the money in his lunch box.

On December 15, 1998, twenty days after the first theft, a Brinks armored car picked up money from Citizen States Bank in Kingsland, Georgia and transported the money to Jacksonville, Florida. Ward was working as the only

2

security guard in the back of the car.  At some point before arriving in Jacksonville, Ward broke the seal on the money bag, removed $70,000 in currency, and placed the money in his lunch box.  Ward had somehow gotten an unbroken seal in advance, and when the armored car arrived at the Brinks office in Jacksonville, he obtained a crimper and used it to place the unbroken  seal on the bag.

Eight days later, on December 23, 1998, Ward was questioned by FBI agents about the missing $90,000, and he admitted to stealing the money.  He had already spent $38,000 of the stolen money on electronics equipment, food, liquor, football tickets and other items, but he turned over the remaining $52,000 to the FBI agents.

In January 1999 Ward was charged in a two-count indictment with the taking and carrying away, with intent to steal or purloin, money of a value exceeding $1,000 belonging to a bank, in violation of 18 U.S.C. § 2113(b).  He pleaded guilty the next month to both counts of the indictment.

The initial Presentence Investigation Report ("PSI") in Ward's case established a base level of 4, added 8 levels for the amount of loss, and 2 levels for more than minimal planning.  Ward objected to the two-level increase for more than minimal planning.  The government also objected to the PSI report, arguing

that Ward's offense level should have been enhanced two additional levels for abuse of position of trust, pursuant to U.S.S.G. § 3B1.3. At the sentencing hearing in May 1999, the district court overruled Ward's objection to the enhancement for more than minimal planning and applied that increase. The court also increased the base offense level by two more for abuse of position of trust. Ward's total offense level was 14, which, with a criminal history category of I, resulted in a guideline range of 15 to 21 months. The court sentenced Ward to 15 months imprisonment and 3 years of supervised release as to each of the two counts, to be served concurrently. Ward appeals his sentence.

## II. DISCUSSION

### A. The More than Minimal Planning Enhancement

Sentencing Guideline § 2B1.1(b)(4)(A) provides for an enhancement if the offense involved "more than minimal planning." Ward contends that guideline should not have been applied to him, because he simply took advantage of being left alone in the back of the armored truck, removed money from a bank bag, and placed the money in his lunch box. He also contends that these two thefts, both of which occurred within a month's time, were not repetitive and that he took no steps to conceal them. We review a finding of more than minimal planning only for clear error. United States v. Tapia, 59 F.3d 1137, 1144 (11th Cir. 1995).

4

The commentary to § 1B1.1 of the Sentencing Guidelines explains that an enhancement for more than minimal planning is intended to apply to an offense which involves "more planning than is typical for commission of the offense in a simple form," and it instructs that "'[m]ore than minimal planning' is deemed present in any case involving repeated acts over a period of time," except where the acts were clearly "opportune." U.S.S.G. § 1B1.1, comment. (n.1(f)); United States v. Garcia, 13 F.3d 1464, 1470 (11th Cir. 1994). The commentary also explains that "[m]ore than minimal planning" may be found when "significant affirmative steps were taken to conceal the offense . . . ." U.S.S.G. § 1B1.1, comment. (1(f)).

Ward's actions surrounding the two thefts evidence more planning than is required for the commission of this crime in its simplest form, and he did take affirmative steps to conceal his offense. In preparation for the second theft, Ward somehow obtained in advance a seal. When he arrived at the Brinks office in Jacksonville, he got a crimper from inside the office which he used to place the previously obtained seal on the money bag, obviously in an attempt to prevent anyone from noticing, as they probably would have noticed, an unsealed bag. Moreover, Ward did not commit a single theft, but two thefts on separate occasions, twenty days apart. Although the commission of two thefts may not constitute "repeated acts" and thereby be sufficient by itself to justify a more than

5

minimal planning enhancement, the fact that Ward committed two thefts does weigh in favor of the enhancement. Adding to that fact Ward's advance planning in taking the seal with him for use in his attempt to delay or prevent detection on the second occasion, we cannot say that the district court clearly erred in applying a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(4)(A).

B. The Abuse of a Position of Trust Enhancement

We find more merit in Ward's contention that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust. Section 3B1.3 of the Sentencing Guidelines mandates a two-level upward adjustment of a defendant's base offense level "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." For the adjustment to apply, the government must establish both elements: (1) that the defendant held a place of public or private trust; and (2) that the defendant abused that position in a way that significantly facilitated the commission or concealment of the offense. See U.S.S.G. § 3B1.3; United States v. Kummer, 89 F.3d 1536, 1547 (11th Cir. 1996); United States v. West, 56 F.3d 216, 219 (D.C. Cir. 1995). "We review the district court's fact findings for clear error, but its determination whether the facts justify

6

an abuse-of-trust enhancement we review de novo." United States v. Mills, 138

F.3d 928, 941 (11th Cir. 1998)(citation omitted).

Ward did use his position as a security guard of a Brinks armored car to

facilitate the thefts, but the question is whether the position he held and used was a

"position of public or private trust." The commentary to § 3B1.3 tells us that the

phrase "'[p]ublic or private trust' refers to a position of public or private trust

characterized by professional or managerial discretion (i.e., substantial

discretionary judgment that is ordinarily given considerable deference)." U.S.S.G.

§ 3B1.3, comment. (n. 1). We are further advised that people in such positions

"ordinarily are subject to significantly less supervision than employees whose

responsibilities are primarily non-discretionary in nature." Id. Helpfully, the

commentary gives us examples of cases in which the enhancement does and does

not apply:

> This adjustment, for example, applies in the case of an embezzlement
> of a client's funds by an attorney serving as a guardian, a bank
> executive's fraudulent loan scheme, or the criminal sexual abuse of a
> patient by a physician under the guise of an examination. This
> adjustment does not apply in the case of an embezzlement or theft by
> an ordinary bank teller or hotel clerk because such positions are not
> characterized by the above-described factors.

Id. Finally, the commentary specifically provides that "[n]otwithstanding the

preceding paragraph" the adjustment shall apply "to any employee of the U.S.

Postal Service who engages in the theft or destruction of undelivered United States mail." Id. As we will explain later, even though Ward was not a Postal Service employee, that provision does have implications for this case.

This Court has never addressed the specific issue of whether § 3B1.3 may be applied to enhance the sentence of an armored car guard, or the sentence of a messenger of an armored car company or a courier, which are positions similar to that of a guard. Two other circuits, however, have addressed the issue as it involves couriers or messengers. The Eighth Circuit in United States v. Jankowski, 194 F.3d 878 (8th Cir. 1999), determined that the defendant's position as a messenger for an armored car company fell "far short" of being a position of public or private trust. Id. at 885. The court reasoned that because a messenger of an armored car does not occupy a position with "substantial discretionary judgment that is ordinarily given considerable deference," as required by the commentary to § 3B1.3, such a messenger does not occupy a position of public or private trust. See id. (quoting U.S.S.G. § 3B1.3, comment. (n.1)).

The D.C. Circuit also reached the same conclusion about the position of a courier in United States v. West, 56 F.3d 216 (D.C. Cir. 1995). The Court reasoned that if a courier could be subject to an abuse of trust enhancement "merely because he or she is entrusted with valuable things," the enhancement

8

would eventually be extended "to cover endless numbers of jobs involving absolutely no professional or managerial discretion, in clear contravention of the plain language of the commentary to section 3B1.3." Id. at 221; but cf. United States v. Boyle, 10 F.3d 485, 489 (7th Cir. 1993) (stating that "application of the enhancement depends on whether the defendant has access or authority over valuable things." (internal marks and citations omitted)).[1]  The Court in West explained that "[e]ach of [the] examples [in the commentary] contemplates a 'professional' or 'manager' who, because of his or her special knowledge, expertise, or managerial authority, is trusted to exercise 'substantial discretionary judgment that is ordinarily given considerable deference.'" West, 56 F.3d at 220 (quoting U.S.S.G. § 3B1.3, comment. (n.1)).  The Court concluded that the defendant's "duties as a courier did not involve substantial professional or managerial discretion, and thus [] [he] did not occupy a position of trust within the meaning of section 3B1.3." Id.

We agree with the Eighth Circuit's reasoning in Jankowski and the D.C. Circuit's reasoning in West and believe that it fits the position of armored car

---

[1]  The Court decided in Boyle that the defendant, the president of a company responsible for storing and delivering coins for the Federal Reserve Bank, held a position of trust and affirmed the application of a two-level enhancement under § 3B1.3. Boyle, 10 F.3d at 489.  There is a world of difference between the trust and discretion reposed in the president of a security company and that given to one of the company's many guards.

9

guard equally well. The fact that Ward was charged by Brinks with the duty to guard its property while it was in their armored car does not necessarily make his position one of trust within the meaning of § 3B1.3. See United States v. Tribble, 206 F.3d 634, 637 (6th Cir. 2000) (stating that "just because we trust a person to handle another's property in the course of their job does not mean they occupy a 'position of trust' for the purpose of § 3B1.3"). Much like the defendants in Jankowski and West, Ward had very little discretion in performing his duty as a security guard. Essentially, Ward's duty was to ride in the back of the armored car and guard the money carried in the car from theft. He was given no discretion over where the pick-up and delivery of bank deposits would occur, what would be delivered or picked up, the route the armored car would take, or the schedule of deliveries. Ward was closely, albeit not constantly, supervised by his employer. The money he guarded was processed at the Brinks terminal upon delivery, and any discrepancy between the money received and delivered would be – and was – noticed.

An armored car guard position is comparable to "an ordinary bank teller or hotel clerk" position which we know from the commentary to be outside the scope of the enhancement. Such a guard does not possess any more discretion or managerial authority than a bank teller or hotel clerk, and all three are carefully

10

supervised positions.  A guard on an armored car is also in a position similar to that of a mail carrier, because they both carry property belonging to others from one point to another. The Sentencing Commission felt it necessary in the commentary to provide that notwithstanding the other commentary provisions, the enhancement should be applied in the case of any employee of the United States Postal Service who steals or destroys undelivered mail. That indicates to us that the Commission thought that otherwise mail delivery positions would not be covered.  No such express inclusion "notwithstanding the preceding [provisions]" was included for armored car guard positions,  so they remain excluded.

If we were to interpret the § 3B1.3 enhancement to apply to those occupying positions with as little discretion and managerial authority as armored car  guards, it would be applicable to practically every position that "facilitated the commission or concealment of the offense."   That would be wrong.  As we have stated, "section 3B1.3 simply does not extend to every employment situation." United States v. Long, 122 F.3d 1360 (11th Cir.  1997).

For  these reasons, we conclude that Ward's position as a guard on an armored car did not involve substantial professional or managerial discretion, and therefore was not a position of public or private trust within the meaning of §

11

3B1.3. As a result, the district court should not have applied that enhancement in calculating Ward's sentence.

## CONCLUSION

The sentence in this case is VACATED and the case is REMANDED for the limited purpose of re-sentencing without the § 3B1.3 enhancement.