12    *United States v.*
*Gregory, et al.*                      Nos. 01-5942/6445

For the foregoing reasons, we AFFIRM Lockhart's conviction and sentence. As mentioned above, we REMAND Gregory's sentence to the district court for a two-level downward adjustment for acceptance of responsibility.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0014P (6th Cir.)
File Name:  03a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

         *v.*                              Nos. 01-5942/6445

KENNETH GREGORY
(01-5942); LISA LOCKHART
(01-6445),
         *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 00-20256—Jon Phipps McCalla, Patrick J. Duggan,
District Judges.

Argued:  December 9, 2002

Decided and Filed:  January 13, 2003

Before:  MARTIN, Chief Circuit Judge; DAUGHTREY,
Circuit Judge; O'MALLEY, District Judge.[*]

───────────────────

[*]The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

1

————————

## COUNSEL

**ARGUED:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, for Appellants. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Stephen B. Shankman, M. Dianne Smothers, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, for Appellants. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

————————

## OPINION

————————

BOYCE F. MARTIN, JR., Chief Circuit Judge. Kenneth Gregory and his sister, Lisa Lockhart, appeal their convictions and sentences arising out of the transfer of contraband from Lockhart to Gregory while he was in prison, in violation of 18 U.S.C. §1791(a)(1) and (2). Gregory claims that he was entitled to a three-point reduction in offense level under United States Sentencing Guidelines Section 3E1.1 for acceptance of responsibility even though he received a sentence enhancement for obstruction of justice under Section 3C1.1. He argues he is entitled to the reduction in spite of the enhancement because his is an "extraordinary" case under Application Note 4 of Section 3E1.1. Lockhart appeals her conviction on the ground of legal impossibility. She further appeals her sentence, claiming that the district court improperly enhanced her sentence under the Sentencing

Very few courts of appeals have considered this Section at all, and those that have have taken it for granted that transfer means distribution. In *United States v. Torrejon*, 1996 WL 137091, *2 (9th Cir. Mar. 26, 1996), the Ninth Circuit followed the analysis of the district court in this case, and Torrejon was sentenced with a base offense level of twenty-six for providing heroin to her husband while he was in prison without any discussion of distribution or the amount of drugs at issue. The same is true in the case of *United States v. Zambrana*, 1998 WL 516779, *2 (7th Cir. July 30, 1998).

Similarly, in one of the few published cases citing the Section, the Eleventh Circuit held that Section 2P1.2(c)(1) applied as a base offense level and that Chapter Three adjustments are made after the adjustment to an offense level of twenty-six. *United States v. Long*, 122 F.3d 1360, 1364 (11th Cir. 1997). This case involved eighty-five grams of cocaine, so distribution versus transfer was never discussed, but the applicability of Section 2P1.2(c)(1) was presumed. We find no inherent conflict in Section 2P1.2(c)(1) as to Lockhart.

Nevertheless, we do see a conflict for a person in Gregory's situation, although Gregory did not raise it. Because Gregory violated 18 U.S.C. §1791(a)(2) (applying to the person already incarcerated) and not Section 1791(a)(1), the second sentence of the cross reference, Section 2P1.2(c)(1), does not apply to him. As a result, it is unclear whether Gregory should be sentenced under the first sentence of the cross reference, which refers to the drug quantity tables set out at Section 2D1.1, *or* under Section 2P1.2(a)(2), which refers to various types of contraband including methamphetamine. Sentencing Gregory under the former, as the district court did, set his offense level at fourteen. Sentencing under the latter would have set Gregory at a base offense level of thirteen. In other cases, based on the amount of drugs at issue, the disparity could be much more dramatic and could thereby have a drastic effect on the length of a prisoner's sentence.

resulting offense level is less than level 26, increase to level 26.

Under the first part of this section, Lockhart would have an offense level of thirteen. The Guidelines, however, immediately take us to the cross-reference in Section 2P1.2(c)(1).

When applying the cross-reference in 2P1.2(c)(1), Lockhart's base offense level is subject to Section 2D1.1 (Unlawful Manufacturing, Importing, Exporting, Trafficking, or Possession), because the district court found the object of the offense was distribution of a controlled substance. Lockhart objects to this characterization of the offense; she says that her actions constituted a transfer but not a distribution because the United States presented no evidence as to what Gregory intended to do with the drugs. The district court found that a "transfer" constitutes a "distribution" for the purposes of this inquiry.

As to the second part of the cross-reference in Section 2P1.2(c)(1), Lockhart was convicted under Section 1791(a)(1) of providing contraband in prison, which is punishable under Section 1791(b)(1), because the object transferred was methamphetamine or a narcotic drug. Her offense level from Section 2D1.1 was less than twenty-six, based on the small amounts at issue. Under this Section, however, her offense level then bumps up to twenty-six.

Lockhart argues that to decide her case in this way is to render Sections 2P1.2(a)(2) and (3) superfluous. She says that if a transfer is always a distribution, the cross-reference will always apply, and offenders all will have a base offense level of twenty-six. While Lockhart is correct that this section was poorly drafted, we believe that for the purposes of this section, a transfer constitutes "distribution." It is irrelevant what purpose Gregory may have had for the drugs. Lockhart did not simply possess the contraband but distributed it to her brother.

Guidelines Section 2P1.2 for distribution of a controlled substance.

On February 26, 2000, Lisa Lockhart visited her brother, Kenneth Gregory, at the Federal Correctional Institute in Memphis, Tennessee. Before her visit, prison authorities had received information from a confidential informant that Lockhart might attempt to bring some sort of contraband into the prison for Gregory. As a result, prison authorities used video surveillance to observe the visit between Lockhart and Gregory.

At some point in the visit, authorities observed Lockhart spitting something into a cup. Gregory then took the cup and swallowed its contents. After the visit, prison authorities placed Gregory in a "dry cell" for several days. Eventually, he passed two balloons filled with drugs. These balloons contained cocaine and methamphetamine. Gregory also received medical attention later for an accidental heroin overdose, apparently resulting from the rupture of a third balloon.

Federal investigators first interviewed Gregory in March. He admitted to accepting and swallowing the three balloons of drugs from Lockhart. He also agreed to cooperate in the investigation if his sister received no prison time.

On May 10, prison officials monitored a phone call between Gregory and a female. He told this female to tell another female not to talk to anyone or admit anything and that more information would follow. On May 11, officials intercepted a letter and a card from Gregory to Lockhart advising her not to cooperate with federal officers. He asserted that he did not think they had enough evidence to charge her. He also offered alternate explanations for Lockhart to explain the surveillance tape. Gregory was interviewed again on May 11. He asked to speak with Lockhart before he cooperated any further. He called his sister and told her to cooperate with FBI officials. He then

put an FBI agent on the phone with Lockhart. The agent notified her that an agent in Oklahoma would contact her, but the FBI was later unable to make contact with Lockhart in Oklahoma. In this interview, Gregory never mentioned the letters he wrote the very same day.

Gregory was charged with possession of contraband in prison. He entered a plea agreement with the United States, and the United States agreed to recommend a reduction in offense level for acceptance of responsibility. The district court described Gregory's letters as an attempt to obstruct justice and gave Gregory a sentence enhancement under Section 3C1.1. The district court also, by reference to the addendum of the pre-sentence report, implicitly rejected Gregory's case as an "extraordinary" one that would permit an acceptance of responsibility reduction.

The United States charged Lockhart with providing contraband in prison. She was arraigned and pled not guilty in March of 2001. After being found guilty at trial, the district court sentenced her in November. At the sentencing, the district court granted an enhancement to an offense level of twenty-six under USSG §2P1.2, for distribution of a controlled substance.

As to Gregory's case, we review for clear error a district court's determination of whether a defendant has accepted responsibility for his crime. *United States v. Robinson*, 152 F.3d 507, 512 (6th Cir. 1998). The applicable note for Section 3E1.1 of the Sentencing Guidelines says, "Conduct resulting in an enhancement under Section 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both Sections 3C1.1 and 3E1.1 may apply." USSG §3E1.1, comment, n.4. A district court's determination that a defendant's case is "extraordinary" under these circumstances is a question of law that we review de novo. *United States v.*

would attempt to illegally bring contraband into the institution, where that person does not himself rely on the warden's consent or knowledge, would not defeat a conviction under the statute." *United States v. Adams*, 768 F.2d 1276, 1277 (11th Cir. 1985). *See also United States v. Roybal*, 795 F.2d 382 (5th Cir. 1986). Lockhart has not proven that the warden knew or consented to her transfer of contraband to Gregory. As a result, 28 C.F.R. Section 6.1 does apply.

Lockhart secondly asserts she was improperly sentenced under the federal Sentencing Guidelines. "We review a district court's factual findings in relation to the application of the sentencing guidelines under the clearly erroneous standard." *United States v. Krimsky*, 230 F.3d 855, 861 (6th Cir. 2000). The application of those facts, however, is a legal question and is to be reviewed de novo. *Id.*

Turning to the merits of Lockhart's second claim, Section 2P1.2 of the Sentencing Guidelines states, in relevant part,

§2P1.2. PROVIDING OR POSSESSING CONTRABAND IN PRISON
(a) Base Offense Level: . . .
(2) 13, if the object was a weapon (other than a firearm or a destructive device), any object that might be used as a weapon or as a means of facilitating escape, ammunition, LSD, PCP, methamphetamine, or a narcotic drug.
(3) 6, if the object was an alcoholic beverage, United States or foreign currency, or a controlled substance (other than LSD, PCP, methamphetamine, or a narcotic drug). . . .
(c) Cross Reference
(1) If the object of the offense was the distribution of a controlled substance, apply the offense level from §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking; Attempt or Conspiracy). Provided, that if the defendant is convicted under 18 U.S.C. § 1791(a)(1) and is punishable under 18 U.S.C. § 1791(b)(1), and the

Lockhart cites only to the case of *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973). "One of the elements of a violation of § 1791 is the absence of 'knowledge and consent of the warden or superintendent . . .' 28 C.F.R. § 6.1. From this, the defense reasons that if the warden knows of the smuggling, the purpose of the law is satisfied and no crime can exist." *Id.* at 185. Lockhart claims that the warden knew of her intent to bring contraband into the prison because he was tipped, and as a result, she cannot have committed this crime.

The United States, however, says that the *Berrigan* case is the minority view of legal impossibility. The Ninth Circuit explained, in *United States v. Everett*, 692 F.2d 596, 600-01 (9th Cir. 1982) (internal citations omitted), "*Berrigan* is considered a minority view on the issue of legal impossibility and most courts and commentators have not adopted the *Berrigan* approach. Clearly, this court has rejected *Berrigan*." The Third Circuit itself said, in *United States v. Hsu*, 155 F.3d 189, 199-200 (3d Cir. 1998) (internal citations omitted), "In fact, we are the only circuit which continues to recognize a common law defense of legal impossibility. . . . In subsequent years, however, we have explored and defined *Berrigan*'s reach and have recognized exceptions to the *Berrigan* rule." *See also United States v. Goodpaster*, 769 F.2d 374, 380 n.6 (6th Cir. 1985) (Martin, J., dissenting); *United States v. Yang*, 281 F.3d 534, 543 (6th Cir. 2002); *United States v. Peete*, 919 F.2d 1168, 1176 (6th Cir. 1990).

Even if we accepted the rule of *Berrigan*, Lockhart's case puts forth no evidence that the warden actually knew she was bringing contraband into the prison. Further, she offers no evidence that he consented to the transfer. Rather, during the trial, the warden testified specifically that he did not have knowledge that Lockhart would bring in contraband. He merely suspected she might, based on the tip. He further testified that he certainly did not consent to any contraband. As the Eleventh Circuit held in a similar case, "That the warden may have suspected, or even known that a person

*Harper*, 246 F.3d 520, 525 (6th Cir. 2001) (overturned on other grounds). We have held, however, "Sixth Circuit law interpreting this provision has consistently granted district courts great leeway when making this determination." *United States v. Roberts*, 243 F.3d 235, 241 (6th Cir. 2001).

In evaluating whether Gregory's case was an "extraordinary" one, we must look at the relationship between his obstructive conduct and his acceptance of responsibility. We said in *United States v. Williams*, 940 F.2d 176, 183 (6th Cir. 1991), "Courts have employed an exacting standard to determine whether a defendant has accepted responsibility after having obstructed justice." Appropriate considerations for determining whether a reduction is warranted include the defendant's truthful admission of the offense conduct, the defendant's voluntary assistance to authorities in resolving the offense, and the timeliness of the defendant's conduct in affirmatively accepting responsibility for his actions.

At his interview the week after the transfer, Gregory admitted to accepting and swallowing the three balloons of drugs. The pre-sentence report indicates that Gregory agreed to cooperate at this point, although he did not want his sister to get in any trouble. The United States agreed to recommend that Gregory be granted a reduction in offense level for acceptance of responsibility as part of his plea agreement, provided that he continue to cooperate. He did so, and the United States made its recommendation. Gregory argues that, although he had sent the letters to his sister the same day urging her not to cooperate, he effectively undid that conduct by calling Lockhart on May 11, 2000, with the FBI agent, urging her to cooperate. All of his obstructive conduct predated the indictment and the guilty plea. He has fully cooperated subsequently.

Gregory cites a Ninth Circuit case, *United States v. Hopper*, 27 F.3d 378 (9th Cir. 1994), as supporting his view that he was entitled to an acceptance of responsibility adjustment. The Ninth Circuit wrote, "Cases in which obstruction is not

inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." *Id.* at 383. We have implicitly adopted the standard of *Hopper* in unpublished cases. *See United States v. Mizell*, 1996 WL 528956, *4 (6th Cir. Sept. 17, 1996); *United States v. Lunsford*, 1996 WL 67919, *2 (6th Cir. Feb. 15, 1996). The court in *Hopper* went on to say, "[A]s long as the defendant's acceptance of responsibility is not contradicted by an ongoing attempt to obstruct justice, the case is an extraordinary case within the meaning of Application Note 4 and simultaneous adjustments under §§ 3C1.1 and 3E1.1 are permissible." 27 F.3d at 383. Gregory claims that his obstruction was not ongoing, and he is entitled to an adjustment for acceptance of responsibility.

Two cases from this Court may prove instructive as to how we evaluate these cases. In *United States v. Harper*, 246 F.3d at 528, we dealt with somewhat similar facts. We said it is

> the defendant's burden to demonstrate that his case is 'extraordinary' such that he deserves the downward adjustment. This burden is not, however, insurmountable. For example, if a defendant awaiting trial escapes from custody but then immediately turns himself into authorities, this could constitute an "extraordinary" case in which a defendant accepts responsibility subsequent to an attempt to obstruct justice.

As further instruction on what constitutes "extraordinary," in *United States v. Williams*, one of the co-defendants "recanted his trial testimony and moved to withdraw his plea agreement, subjecting the court to a hearing on the issue, before restating his original position and accepting responsibility." 176 F.3d 301, 311 (6th Cir. 1999). This defendant was nevertheless entitled to a reduction for acceptance of responsibility. We concluded, "This case does indeed seem to be one of the extraordinary circumstances contemplated by Application

Note 4 to U.S.S.G. § 3E1.1, where an acceptance of responsibility downward adjustment can co-exist with an obstruction of justice enhancement under USSG § 3C1.1 (in [the defendant at issue's] case, for recantation of his testimony)." *Id.*

With those cases in mind, we find that Gregory's situation was an extraordinary one as contemplated by the Guidelines. All of his obstructive conduct predated his indictment, and he has never denied his own responsibility and guilt. Long before he was ever charged with an offense, Gregory cooperated with prison officials, and he pleaded guilty. He certainly never did something so extreme as to withdraw his plea. He is entitled to a downward adjustment for acceptance of responsibility.

For the foregoing reasons, we REMAND Gregory's sentence to the district court for a two-level downward adjustment for acceptance of responsibility.

Turning now to Lockhart's claims, she claims first that she cannot be guilty of the underlying offense of providing contraband in prison, because the prison officials knew she was bringing contraband. As a result, she claims, she committed no crime under 28 C.F.R. §6.1. She further claims that her sentence was improperly enhanced under the cross reference in Section 2P1.2 of the Sentencing Guidelines.

Turning to Lockhart's first claim, we note that the regulation governing this offense says, "The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the warden or superintendent of such Federal penal or correctional institution is prohibited." 28 C.F.R. § 6.1. Lockhart points to this section as the basis for her assertion that she cannot be guilty of a violation of Section 1791.